Mr. Harvey, you may proceed whenever you're ready. Yes, Judge Sykes. Might I reserve five minutes for rebuttal? I had asked for it. I wanted the court to note it. You may. Can you see the courtroom clock? I can, and I will pay attention to it. Sorry. Okay. There you go. Thank you. All right. Let me get right to it. The court has read the briefs and our arguments. Let us identify what we believe to be the district court's principal error and why we believe that the June 14, 2019 opinion in order should be reversed. The principal error that the court made is that it concluded, as a matter of law, that there was no irrevocable – there was an irrevocable forfeiture of rights and defenses by the defendants. That is not accurate. And you know that just by looking at the defendants' three affirmative defenses that they asserted as well as their four counterclaims. Mr. Harvey, I'm sorry to interrupt you, but before we get too far into the substance, I have just a couple of jurisdictional questions for you first, please. Yes. First, it does not appear that the district court entered an amended judgment order, a Rule 58 order, after it calculated the damages in the post-judgment interest. Am I missing something? There was an original judgment order entered after summary judgment was entered, but then damages were calculated, and I didn't see an amended judgment order. But I want to make sure I'm not missing something. Judge, I believe that the district court did enter such an order, along with its opinion, when it issued that supplemental opinion addressing the interest question. I think it was an opinion and an order. So you think there was a separate Rule 58 order? I didn't see it on the docket, but I may – I think there was. I think there was an opinion and an order, and the court, I think, styled its opinion as an opinion and order. And as we read the docket entry, it appeared to – Well, there was an opinion, but I didn't see the separate Rule 58 judgment order, the amended one. But if we need it, we'll ask for it. But my second and more substantive question, and Mr. Mankies, I'm going to ask you this as well. Mr. Harvey, you were about to go into the counterclaims in this case. Yes. The district court, when it ruled on summary judgment, addressed part of the counterclaim in count one of the counterclaims. Yes. And said it was moot, and then left the other part pending. In a July hearing, July 18th specifically, 2019, the defendants indicated they were going to withdraw their counterclaims. But there was a caveat to the withdrawal of counterclaims two and three. And the court's subsequent order reflects that, that the counterclaims are withdrawn. Yes. And there's a caveat that the defendants may seek injunctive relief in the future if the escrow agent refuses to relieve the funds. Two questions. One, the counterclaims were withdrawn. There's no indication that they were withdrawn with prejudice. Is a simple withdrawal of counterclaims sufficient for a final judgment for us to review? And two, does that caveat that really doesn't make counterclaims two and three final impact our jurisdiction at all? And again, Mr. Mankies, you get a preview. I'm going to ask you the same question since they're your counterclaims. Thank you. Judge, let me take the second question first. I do believe that the order is final. I do believe that the withdrawal, even if without prejudice, makes it final. I think the claims have been resolved, and therefore they are final.  Those two remaining counterclaims are not pending. They aren't pending, but since it appears to be without prejudice, there wasn't an indication it was with prejudice, wouldn't that impact our jurisdiction? I don't think it would preclude the Court of Appeals from reviewing the case in its present status. I think that all claims below have been resolved as of right now, and I do think the court can exercise jurisdiction over the matter. What's the impact of the caveat that the defendants can seek future relief on counterclaims two and three if they wish to? Well, I think that for purposes of appellate jurisdiction, it has no impact on whether or not the case is final and in a position to be reviewed by the Seventh Circuit. I think what the district court was attempting to do, and I'm just trying to read into what it's attempting to do, is it may permit, it may exercise supplemental jurisdiction at some later point after appeal if it turns out that there are some administrative orders or supplemental orders that need to be issued with respect to the escrow account. But if the district court could still exercise supplemental jurisdiction, wouldn't that impact our jurisdiction? I don't think it necessarily does, because I do think all claims that have been filed in the case have been resolved. And I do think that as a result of the district court's two opinions, there are no pending claims below, and therefore it permits appellate jurisdiction and the exercise of appellate jurisdiction. I think the fact that the claims were dismissed without... Would it be correct to say that any claim based on, for example, a future refusal by an escrow agent to comply with the district court's judgment is simply not ripe yet? I think that's right. It's a matter of enforcing a judgment rather than wrapping up matters in the district court at this point. I think that's right, Judge. And I think that district courts occasionally do exercise supplemental jurisdiction after they have concluded the matter to deal with issues that do arise post-judgment. And I think that's the situation. Thank you, Mr. Harvey. Thank you. So, what I was addressing was the principal error that I believe that the district court made, and that is reaching a conclusion that there was no irrevocable forfeiture of any right or any defense. Now, the three defenses that the district court identified were, number one, whether or not the defendants could contest whether former clients are entitled to refunds. That's a third-party claim. Secondly, to negotiate individual settlements. Again, that's a third-party claim in the event a third party filed a claim, which it hasn't in this case. Thirdly, the right to participate in an investigation, which relates to a direct claim. But I think the district court conflated the right to investigate in the context of a third-party claim with respect to the defendant's ability to investigate if they chose to do so. And here they did not. Mr. Harvey, your notice invoked provisions for the third-party claims as well as the direct claims. So, how can you say that the sellers didn't have the right to invoke rights associated with third-party claims? Because when we file suit, we only file suit under the direct claim provision of the contract, 8.05C. We did not file suit under the third-party claim. And here's how you know, how the court is aware that no irrevocable forfeiture of rights occurred. If you take a look at the counterclaim, the first counterclaim asserted by defendants in this case, they asserted that counterclaim under the Declaratory Judgment Act, 28 United States Code 2201 and 2202, as the district court noted. And the district court noted correctly that that allows a defendant to sue to establish its non-liability. In this case, non-liability would mean that Sterling Bank made no valid claim to the escrow, identified no valid breach to the escrow agreement, and did not satisfy indemnification. If you take a look at the declaratory judgment relief sought by defendants, as well as the affirmative defenses, and they asserted three affirmative defenses here. The affirmative defenses that they asserted had to do with their lack of liability for their misstatements of their financial statements. But also, Sterling Bank had no right, according to the defendants in their affirmative defenses, to seek recovery from the escrow fund, because Sterling Bank, according to the defendants in their affirmative defenses, did not satisfy the terms of the indemnification agreement. So what we're saying is, in order for there is no defense that the defendants could have possibly asserted that was not covered by count one of their counterclaim, namely under the Declaratory Judgment Act, because what they were seeking was a declaration from the court that Sterling Bank had no rights to assert under the indemnification provision of the SPA. And so between the three affirmative defenses that were asserted, the four counterclaims that were asserted, particularly the first counterclaim under the Declaratory Judgment Act, they asserted all of the defenses they wanted. Also, if you look at the alleged defenses that the defendants claimed they irrevocably lost, those defenses really go to claims that would have been made by a third party, their former client. Claims, a defense of release, a defense of voluntary payment, a defense of statute of limitations, a defense of account stated, and a defense of course of dealing. All those claims really would have been asserted against their former client, not in a direct way. Mr. Harvey, could I ask you a couple of questions about where you may see this headed in the future? Yes. First of all, do you agree that your clients are not entitled to the escrow simply because you chose to make payments to clients? Not purely for that reason. I agree with you, Judge. The voluntary choice to pay clients to keep them happy is not enough? That is not enough, no. There has to be a breach of the agreement. So here's what the breach of the agreement is with the underlying clients. Yes. Here's what I'm concerned about. I understand your position to be that these defenses of voluntary payments, statute of limitations, account stated, course of dealing, and maybe I missed one, are still available to be litigated. So that what we would foresee if we remand to the district court on your theory concerning notice and irrevocable loss issues is in essence that you and the sellers would wind up litigating maybe the equivalent of a couple of hundred of breach of contract claims involving the former or involving the clients. Where the clients would not be a party but you and the sellers would be fighting this out. That's correct, Judge. But they would be litigated in the context of the representations that the defendants made under the SBA to the bank. Right. But that would ultimately depend upon the merits of the hypothetical breach of contract claims by the client. That's correct. Okay. And if that's right and everybody's limited to the $2 million in the escrow. Yes. And if the district judge is right with knowing that interest should not be awarded and losses don't include attorney's fees, it sounds like that $2 million escrow could get chewed up pretty fast. We don't think so, Judge. It's hypothetically possible, but we don't think so. Given the amount of our claim and given the fact that there is no prejudgment interest because the parties contracted for there not to be prejudgment interest. And, in fact, the defendants have conceded as much. If you look at defendants' brief, their reply brief, what they've said is on page 15 of their reply brief that they acknowledge that the SBA section 8.06 does not explicitly address prejudgment interest. There's a reason why it didn't. These sophisticated parties decided that there was going to be an escrow account. And if we wanted to put it in an interest-bearing account, both parties would jointly contact the escrow agent and say, please put this in an interest-bearing account. The defendants never asked Sterling Bank to do it. Sterling Bank never asked the defendants to do it. Neither of the parties decided to put it in an interest-bearing account. So we just don't think that it will, the litigation or the damages that defendants would face, would blow through the $2 million. We think the $2 million escrow is an accurate one. And we think that it would be preserved. So let me, if I could ask you, the district judge focused also on the timeliness of notice. Yes. And frankly, both sides' briefs are kind of tilting at straw man here. The key phrase is become aware. Yes. A claim that would require some investigation. And it seems to me that that has to mean somewhere in between, quote, allegations and possibilities and knowing every detail of these potential claims. And so the phrase become aware looks pretty ambiguous to me. Can you help me out? It is somewhat unclear. I think it has to be read along with the provision of a contract that requires that if there is going to be notice, and that's SPA Section 8.05C, again, the direct claim provision, that says if you're going to give notice of a breach, you have to provide reasonable detail and an estimated amount. What the district court said was when Sterling Bank went to the United States Attorney's Office for the Northern District of Illinois to report what it believed to be financial fraud as a financial institution, that it told the United States Attorney in its talking points that there were potential billing problems, that the bank was in the early stages of its investigation, and that there was a possibility of fraudulent conduct. The district court seizes upon that date and says, well, you knew by that date. And the answer is, no, we didn't, because we didn't hire the forensic accountants until two months later. I understand that. But why wasn't the November 27, 15 report to the U.S. Attorney's Office sufficient? You're thinking about the December 2, 2015 report. I'm looking. I think there was a memo. Maybe I'm misremembering. Yes, there was a memo, but the actual report took place to the U.S. Attorney took place on December 2, 2015. In terms of your client's knowledge, though, I would think that the memo dated November 27 would be more relevant than when you chose to disclose it to the U.S. Attorney. But let's focus on that memo. Yes, sir. That's a fair observation. I think at that point the bank did not have sufficient detail, but it was close. And so it gave notice as of December 11, which was within 10 days of the December 2 report to the U.S. Attorney, and a declination by the United States Attorney's Office that it would not pursue the case. That memo says, though, that you had completed your investigation at that point, and you had already notified your clients that they might be getting money back, and you had hired a forensic accountant. How could you not have been aware or become aware of it at the point that you had completed your own internal investigation of the claims? That is a fair point if you read aware broadly, but that still doesn't answer the question, and it doesn't support the district court's entry of summary judgment, because we do not lose our rights under the escrow and our rights under the agreement, even if the notice is beyond 10 days. I understand, but that's a second point. And you've been contesting both the become aware of notice trigger as well as the waiver or forfeiture of your rights. That's correct. to pick up on what Judge Hamilton was asking. I don't know how you get around the fact and can argue that you were not aware or had not become aware at the latest, that December 27, 2015 memo, where it says you've completed your own investigation. Judge Saini, I will not be intellectually dishonest with you. If you read awareness in the plain meaning of the word, then you are correct. And Judge Hamilton is correct. By that November date, we would have satisfied the definition of awareness. That is correct. What we're saying. Go right ahead. No, go ahead, please. What I'm saying is, though, even if you identify that awareness, when we met, what we were trying to do in good faith was not interfere with any action that the United States attorney's office might take. But secondly, as soon as we got the declination notice on December 2nd, when they told us we gave notice immediately within 10 days. And more importantly, the defendants did not lose any rights. They did not lose any protections. And I certainly understand your reasoning for not wanting to say something. But in terms of the contract, it doesn't seem that there's any exception for that. That's a fair point. Again, I will not argue with the court. If the court reaches a conclusion that awareness is the means exactly what one would think it would mean, according to the dictionary, having some level of notice rather than some level of certainty. I will not debate that. But I think it then shifts to, OK, defendants, what was the harm that you suffered? Certainly with respect to those claims that weren't paid. You suffered no harm with respect to those. But even with respect to the ones that were paid, let's take a look at the timeline. And here's the timeline. So when defendants were given notice on December 11th, they decided they chose to answer it on December 24th. Their response was refusal. Sterling Bank responded on December 30th with a fact that it was still making a claim under the indemnification provision. The suit was filed September 16th of 2016, nine months later, essentially, and an answer was filed November 28th of 2016. So what the defendants are arguing is that within this period of time, even though they didn't ask for an investigation, they didn't ask for a turnover of Sterling Bank's records, that they were somehow precluded from conducting an inquiry into conduct which they already knew about because they originated it, but more importantly, that somehow they lost rights and defenses. The defendants, as we say in the papers, could very easily have filed their own declaratory judgment act. We know that because the first counterclaim they asserted wasn't one under the Declaratory Judgment Act. And so they could have come into state court and filed a declaratory judgment action. They could have come into federal court and filed a declaratory judgment action saying, Sterling Bank has placed a hole on this escrow. We think it's improper. We think they have no rights to this money. We think that we have not engaged in any breach of the stock purchase agreement, and we should be entitled to take 100% of the escrow. The defendants never did that. They didn't do it in December when they were notified. They didn't do it for nine months in 2016 when they had the opportunity to do it. And even after this suit was filed, they didn't lose any rights or remedies. Ms. Harvey, isn't the material point that the defendants irrevocably lost the right to participate in the investigation that had been ongoing for many months prior to receiving notice? No, because they don't get that right under a direct claim. They get a right to investigate, meaning the right to ask for information from Sterling Bank. If you look at the third-party claim provision, if there had been a third-party claim asserted against the bank, which there wasn't, there never has been, then they would have a right to participate as an insurer would. But what the defendants are doing is they're conflating the third-party claim process with the direct claim process. This is a claim by Sterling Bank directly against defendants for their inaccurate financial statements and disregarding the representations and warranties that they made to the bank. So the only investigative right that the defendants had was to contact Sterling Bank, which they never did, and ask Sterling Bank, give us the underlying information that supports your claim against us under this particular provision, the direct claim provision, Section 8.05C of the Stock Purchase Agreement. They never did it. And even in this litigation, they did ask for it. You're well into your rebuttal time. Okay, thank you. I will stop here. Yes, thank you. May it please the Court. My name is Bruce Menkis, and I'm arguing on behalf of the shareholders of a company called Damien Services Corporation that were defendants in the district court case below. Let me start by answering Judge St. Eve's question about jurisdiction. First, we did not agree to voluntarily dismiss count one, the declaratory judgment count. The district court stated that that count was moot because of its ruling that the plaintiffs were not allowed to keep the amount in the escrow. Wasn't that just half of the count? It looks like part of the court ruled part of the count was moot, but part of it was still pending. I believe that they – and I'd have to look back at it, Your Honor, but I believe that the court ruled that the count was moot because it was duplicative with the judgment they'd already rendered. With respect to our cross-appeal, we believe that was timely because it was filed within 14 days after the ruling on interest. What about your other counterclaims that you withdrew? Do you – are you withdrawing those other than the one that isn't ripe yet? Are you withdrawing the other counterclaims with prejudice? We did, Your Honor. Okay, so you agree that you're not going to pursue those other counterclaims or you're disavowing any right to pursue those counterclaims to the extent they're ripe. Not to the extent they're already ripe. So the one that isn't ripe maybe you can pursue, but the other ones you're agreeing you're not going to pursue. That's correct, Judge, although obviously if this court were to reverse the district court, we would want to be put back into that same position. Right, understand. And do you know, Mr. Menkes, the answer to the question about the separate Rule 58 judgment following the withdrawal of the counterclaims? I do not know that answer. The main issue to us in the case is that we think Sterling is ignoring the structure of the process. The reason why the notice requirement existed. This is not an indemnification provision where Sterling is just entitled to indemnification because they can point that a mistake was made or a financial statement was wrong. They have to involve the sellers in the process of either investigating the claim if it's a direct claim or responding to the claim and fighting the claim if it's a third-party claim for the purpose of minimizing the loss. Minimizing the loss to Sterling, which the sellers are eventually going to have to pay. And that's why it's structured the way it is. And how do we get that, Mr. Menkes, from a plain reading involving direct claims as opposed to third-party claims? You get it from the reading of Section 805C itself and what it says has to happen. There has to be a 30-day period during which the indemnifying party gets to comment on the claim, gets to do some investigation into the claim. They have to be allowed to do an investigation. They have to be given access to Sterling personnel and documents. Did you ask for that? We did not ask for that until we got to this lawsuit. And the reason, Judge Hamilton, is because by that point, the employment contract has all been paid in full. There was nothing left to do. There was no way left to mitigate these damages. Well, I thought you were in a position to argue, and you're still in a position to argue, that the buyers were wrong to make these payments, that there had been no breaches, and that these were just voluntary payments on their part. That is indeed our argument. But the idea that we would now engage in a fact-gathering process no longer made sense once the employment contractors were paid in full. Well, when were they actually paid, and have they all been paid? I thought there were some former clients who had not been paid yet. That's correct. Their first group of clients were paid. The group of clients that stayed with Sterling after the acquisition took place were paid. They were paid on December 15th or 16th, 2015, so four days after the notice was given. And there had already been promised payment before that, before the notice was given. Yeah, but as I read 8.05c, the investigation that's contemplated there does differentiate between direct and third-party claims. And it says, in essence, that the buyers shall allow the sellers, the indemnifying party, and its professional advisors to investigate the manner or circumstance alleged to give rise to the direct claim, so on and so forth. That happens after the notice, not before. That's correct. All the more reason, Your Honor, why the notice needed to have been given in August, not December. If the notice had been given in August, there would have been a chance to conduct an investigation while people's mind was still fresh. There would have been a chance to ask employment contractors whether they thought that the change which took place in 2009 made any difference to them. Why couldn't those questions have been asked, for example, in December of 2015 and January of 2016, in those 30 days after the notice, as compared to in litigation two or three or now five years later? Because they would have had no—because the answers to those questions would not have given the sellers any ability to mitigate the amount of loss at that point. My understanding of your argument, Mr. Minkes, that your right to investigate, your contractual right to investigate, was seriously impaired because of the late notice, to the point that it was irrevocably forfeited because there was so much water under the dam by then. Is that a fair summary? Yes. Yes, Your Honor. But we'd go a little further. We don't necessarily agree that this claim has no bearing at all on Section 8.05a. I realize that no complaint was ever filed, no formal complaint was ever filed in court, but the—Sterling is trying to have it both ways. The reason they paid these claims is because it was a legal liability to do so. In other words, they feared that a suit would be filed. So the procedures of 8.05a have some bearing on this, and it's not fair to say that we just have to treat this as if no complaint was ever going to be filed because if that's true, it was a gratuitous payment, and there's no reason for it to be indemnified. And you're still perfectly able to make that argument, right? Yes. Okay. We're able to make the argument that it was a gratuitous payment. We're no longer able to try to settle the claims or adjudicate the claims or conduct a meaningful investigation at this point. How does anything that happened in this case fit the definition of a, quote, action under the Stock Purchase Agreement? We will concede that the word action contemplates an actual case being filed or at least a demand being made. And that never happened? We're not aware that any demand was being made. But the fact that no demand was made undercuts Sterling's point that the employment contract was actually agreed by the action which took place in 2009. Yeah. Okay. So our main concern with the way the process happened is that whether or not the claim was brought under subsection A or subsection C, the whole purpose of the procedure to minimize both parties working together to minimize the amount of loss was forfeited. And as a result, the sellers were simply asked to pay a bill and not just any bill, a bill which included not just the maximum amount which could have been paid to employment contractors, but included the investigation fee, the attorney's fees, which could not be collected. And that third category, Your Honor, just alluded to the claims of third parties who've never been paid and who may never be paid because we've been told by Sterling that they have no present intention to pay them. They haven't decided whether they're going to do that or not. Mr. Micas, can I ask you on the issue of this notice? Was it the buyers are telling us that your clients responded that the to the December 11, 2015, formal notice of the indemnification demand by saying it was insufficient, that it was not detailed and clear enough. Is that right? Correct. Correct. If you look at 8.05 C, it requires them to give all written information relating to the claim. So if on that, on that theory, would they have been able to make that kind of a disclosure back in August before they brought in the forensic accountants? Is there just getting geared up for their internal investigation? No, there's a big difference between what they knew in August and what they knew in December. If they told us what they knew in August, we wouldn't be here now. All they would have had to tell us is the same information that's in the report they gave to the U.S. Attorney's Office in August. We contend that would have been a sufficient disclosure would have met the requirements of Section 8.05 C. However, when you get to December, they know a lot more information. They have a duty to tell us that information. Now, the fact that they know a lot of information doesn't mean they didn't know of sufficient information in August 2015. They knew the basic facts. They knew the amount that had been lost. They had enough information to tell the U.S. Attorney that fraud might have taken place. They had enough information to contact customers and tell them that they were opening an investigation to see if there was a quote-unquote discrepancy. They had enough information to issue a document hold letter. Mr. Mankis, I want to jump to prejudgment interest for a moment. Sure. Were you asserting an indemnification claim for prejudgment interest, or did you solely assert it under the statute? We believe we have asserted an indemnification claim, and we believe we met the requirements to assert an indemnification claim under 8.05 C. When did you provide notice that you were seeking interest under that indemnification claim? When we filed our answer and counterclaim. Did you request indemnification in your counterclaim? I'm not sure you did. Admittedly, it does not use the word indemnification, but it certainly requests interest, and that's sufficient for a purpose. Under the statute. No, we asked for 12 percent interest under Section 8.06 of the agreement. But there still isn't the kind of judgment that 12.06 calls for, right? There's still no final non-appealable judgment. We disagree that. Where's the final non-appealable judgment here? Well, it's certainly appealable because we're having the appeal today, so we understand that. But we don't think we have separate reasons for thinking that indemnification is not required because we think there was wrongdoing. Judge St. Eve's question was, if indemnification was required, did you ask for it? And our answer to that question is yes, if the court comes to that conclusion. Did you ask for it? My question was a little more specific. Did you ask for interest pursuant to the indemnification provision in the contract, not pursuant to Illinois statute? I don't believe the answer is because we asked for it. The answer is yes. We asked for 12 percent, which was only available under the indemnification provision in the contract. But whether we asked for it under the contract, if we're entitled to it under Illinois law because this was an instrument in writing, we think that the answer in the counterclaim was sufficient to constitute notice that we were requesting that indemnification. We're requesting indemnification under both Illinois law and under the contract. So the parties, this really comes down to the contract on the prejudgment interest question. And the parties set up the escrow. They provide we can agree to put this into an interest bearing account, but never did it. So there's no interest available. Why shouldn't we just hold you both to your inaction in that regard? You said remedies are exclusive under the contract. There's no specific provision for interest. And while there was a ramp that would have let you get to at least collecting some interest for the escrow, neither side took it. Well, a few answers. First, there's not really evidence about why interest was not agreed to under the contract. I don't care why. You could have. You never did. Well, I don't I don't know that it would have been practical to do so. But the entitlement to posture to prejudgment interest does not depend on whether or not the parties avail themselves of every opportunity to get that interest through some other means. Sterling has raised this as an issue that somehow becomes the obligation of the sellers. And because the sellers didn't secure interest in the escrow agreement, they're the ones at risk. We think the burden's on the opposite foot because we think this is a question of mitigation of damages. A second answer to your question, even if the parties had provided for interest in the escrow agreement, that would have only gone towards reducing the amount of interest that they were entitled to on the prejudgment basis. The Illinois rate of 9 percent, the contract rate of 12 percent. If that was greater than had been provided in the escrow agreement, we would still be seeking that amount now. And yet each part I'm reading from eight point oh nine. Each party hereby waives to the fullest extent permitted under law any and all rights, claims and causes of action for any breach of any representation, warranty, covenant agreement or obligation set forth herein or otherwise related to the subject matter, et cetera, et cetera. Except pursuant to the indemnification provisions set forth in six and eight. Well, two two responses to that first. That's that's a correct reading. The first response we actually allege wrongdoing. So under that section, that section only applies unless wrongdoing, fraud or criminality is alleged. We're in we're in the first or intentional misconduct. Yes. Intentional misconduct. Correct. And that's what you think you've got here. Yes, we do. We think that the intentional misconduct was the the man, the two million dollars we put into the escrow when there's no way that that was a reasonable or good faith estimate of how much was required. Are you talking about the original creation of the escrow? Are you talking about the demand for two million? We're talking about the demand on December 11, 2015. OK, that's that's the intentional misconduct we're referring to. OK. And again, they explained that the demand included costs that they had incurred in addition to what they had paid out. How could that be intentional if they had the numbers to back it up? It's intentional because Section 10.03 says they don't get costs and it says so in unequivocal terms. What about attorney's fees? Says they don't get that either. Sorry, it's not 10.03 or what am I looking for here? Yeah, I believe it's 10.03. Yeah, 10.03. I'm sorry, 10.03 is the interpretation section. 10.01A I think is what you're talking about. OK. Yes, thank you. OK, thank you. It is no fees or costs, notwithstanding anything here into the contrary. And the word herein is defied in Section 10.03, which I inadvertently jumped to to mean anything else anywhere in the contract. Got it. So it was not legitimate for them to add those fees in and without those fees, there's no way they get to two million dollars for the demand. For the amount that they forced the escrow agent to retain. Even if you count all of the claims that they never paid and they don't have any present intention of paying, you still don't get to two million dollars. I'd also point out that. Scratch that. We would also point out that we don't believe that Section 10.09 is a Section 8.09, excuse me, is a clear and unintentional waiver. The district court held that we should have known that it covered pre-judgment interest because the word interest is used in two other sections, Section 8.03 and 8.06. But those sections say nothing about forfeiting pre-judgment interest and forever waiving pre-judgment interest. There's a case out of the District of New York, the Katzmann v. Helen of Troy case, and I realize it's not binding on the court, but I think it's a very persuasive case because it considered identical language to this. Identical language and an identical failure to allow the escrow agreement to be dispersed. And in that case, the court held that the defendants can't be held to expecting litigation to come from it and realizing that they were giving up the pre-judgment interest in that litigation, which could eventually happen if the plaintiffs took the unexpected step of refusing to allow the disbursement of the escrow. Sorry. It wasn't reasonable to expect litigation? It wasn't reasonable to expect a chain of events which occurred. There's quite a few events which occurred after that date. In fact, escrows in these kinds of sales of businesses are almost universal in one form or another and are essentially an invitation to litigate. Well, unfortunately, it was an invitation to litigate here, Your Honor. We didn't anticipate that at the time it was signed. Furthermore, I don't think even when December 11, 2015 occurred, the district court says, well, you had 10 days from that point to make your claim for indemnification. Again, that wasn't reasonable. That wasn't even litigation at that point. It wasn't reasonable to believe that the sellers could have said, oh, if litigation ever does occur, we want to make sure we've preserved pre-judgment interest and we'll make an indemnification claim for that. Mr. Mangus, can I ask on a different subject, kind of more back to the core of the underlying dispute? Did Damien render invoices at the end of pay periods? I believe they did. They dated them. They dated them. When were they rendering them? I take Sterling's point that render means send, but our point was slightly different. Our point was that the employment contractors had a right to expect the numbers to be accurate as of the end of the work week. Sunday was two days after the end of the work week. Regardless of the fact that Damien perhaps couldn't send the invoice for another couple of days because he didn't have the employee timesheets, we think the word render is sufficient to capture the idea that the invoice date would be the date at the end of the work week, even if it wasn't sent for a couple of days after that. Thank you. Finally, we'd also like to spend a minute talking about the claim for expense, the copy costs, which we believe were appropriate under 28 U.S.C. Section 1920 Subdivision 4. We think we clearly gave enough information for Sterling to have understood what that expense was for. But that's not really the standard, right? As I understand it, these were for confirming file transfers and for communicating with the client, right? That's what the disputed charges were about. No. Neither of which sounds like copying. I think the district court set it out in its opinion. It said create complex field, direct load documents and images to workspace. I believe Sterling's complaint is that that doesn't give enough information. That's e-discovery costs. That's the cost of translating ESI to readable material. I believe that does give enough information because it says load documents and image to workspace. I think sophisticated parties and certainly sophisticated litigators like Mr. Harvey's firm understand that that's a necessary part of getting copies and getting information in today's discovery environment. And the district court, I believe, found that it was clear that those invoices were for converting the computer data into something that we can read. Correct. Absolutely correct. Which has been found to be recoverable for its costs. That's our position, yes, Your Honor. Thank you very much. All right. Thank you. Mr. Harvey. Yes, I know that I kind of used up a lot of my minutes, but let me take about two and a half. Let me first deal with this idea, the question that Judge Hamilton asked, and that was this idea of rendering in these invoices. It was an absolute violation of their agreement with their clients to put a date on a contract that was on the last day of the workweek when they had been doing it the Friday after the workweek and mailing the invoices the Friday after the workweek. And let me give you some idea of what that meant. In 2014, Damien had a net income of $1,173,621. Their undisclosed liabilities as a result of this backdating scheme was $1,289,916. We have this in our reply brief on page 27. So their undisclosed liabilities in this matter exceeded their 2014 net income simply by this backdating scheme. And the only reason they paid the customers prior to closing is because the customers who found out about it and complained got paid. Secondly, Damien had a script developed that they asked their employees to read to clients, suggesting that Damien would have discovered this on their own when this was their practice that they changed. So if you look at course of dealing, course of performance, it is pretty clear that they were in violation of their own form contracts, which they drafted. And it also violates the duty of good faith and fair dealing. And here is the challenge that the bank has as a federally insured financial institution. We cannot assume that clients are not going to find out. We have to communicate with those clients and let them know what we have discovered as a result of our investigation. Otherwise, we become a party to it. And as you know, as the court certainly is aware, under Illinois law, these clients have a 10-year statute of limitations with respect to breach of contract. So we don't know what clients are going to go through their records, particularly in an economic downturn, and look for accounts receivable, look for monies that might be recovered. Here is the other point when we go to this notice question. When you know that there was no irrevocable forfeiture of any right, just by looking at, again, look at the affirmative defense that the defendants filed here. Their first affirmative defense was failure to comply with indemnification requirement. So their defense was, Sterling Bank, you did not comply with the indemnification requirements set forth in the SPA. That affirmative defense allowed them to challenge everything that Sterling Bank did with respect to the notice, with respect to what it did with client accounts, with respect to information it gave to clients. So with that affirmative defense alone, they could have challenged every single act or any claim in action that the bank took. Secondly, again, if you go back to their declaratory judgment counterclaim, their declaratory judgment counterclaim was seeking an order that the sellers were entitled to 100% of the money in the escrow. And in order for a court to make that determination, the court would have to go through every single claim asserted by Sterling Bank with respect to a breach of the SPA. Consequently, there was no defense that these defendants actually did not assert or could not have asserted in, after they received the notice on December 11th. With respect to this... Mr. Harvey, we'll have to wrap up now. Your time has long been expired. Thank you. Thank you very much. Our thanks to both counsel. The case is taken under advice.